IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TERRY BISSOON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 04-094-E-LMB |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| U.S. BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

Currently pending before the Court is Defendant's Motion for Summary Judgment

(Docket No. 18) and Plaintiff's Motion to Amend the Complaint and Motion for Partial

Summary Judgment (Docket No. 25).  Having carefully reviewed the record, considered oral

arguments, and otherwise being fully advised, the Court enters the following Order.

**I.**

**BACKGROUND**

This is an action filed by Terry Bisson ("Plaintiff") against U.S. Bank ("Defendant").

Plaintiff states that he is "from the West Indies and [his] ancestors are from India."  *Charge of*

*Discrimination*, p. 2 (Dale Affidavit, Ex. F (Docket No. 21)).  Plaintiff was employed by

Order-1-

Defendant as both a bank teller and a personal banker for approximately three-and-a-half years, from June 14, 1999 through December 19, 2002. *Undisputed Facts*, ¶¶ 1, 12 (Docket No. 20). Defendant terminated Plaintiff's employment because he altered certain bank codes for the purpose of permanently waiving overdraft fees on his personal bank account, as well as the accounts of others, so that Defendant would automatically pay their overdrawn checks and waive their associated overdraft fees. *Notice of Termination* (Dale Affidavit, Ex. C (Docket No. 21)). Plaintiff does not dispute that he "changed the overdraft codes on the accounts of himself and his fiancé (now spouse) Karen Campbell." *Response in Opposition*, p. 4 (Docket No. 31). Defendant hired Ryan Park, a Pacific Islander, to replace Plaintiff. *Johnson Affidavit*, ¶ 11 (Docket No. 22).

In response to his termination, Plaintiff filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant subjected him to discrimination on the basis of religion and/or national origin, and retaliated against him for his complaint about a co-worker's remarks. *Charge of Discrimination* (Dale Affidavit, Ex. F (Docket No. 21)). IHRC issued a determination stating that it found no probable cause to believe that Defendant engaged in unlawful discrimination. *Complaint*, ¶ 14 (Docket No. 1).

On December 17, 2003 Plaintiff filed the instant action alleging that Defendant breached an implied covenant of good faith and fair dealing by terminating his employment, and that Defendant created a hostile work environment, failed to promote him, and terminated his employment on the basis of his race and/or national origin in violation of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act. *Complaint*, ¶¶ 15-18 (Docket No. 1).

Order-2-

One year later, on December 3, 2004, Defendant filed its pending Motion for Summary Judgment (Docket No. 18).  Defendant argues that there are no genuine issues of material fact related to any of Plaintiff's claims against Defendant and that Defendant is entitled to judgment as a matter of law as to each of Plaintiff's causes of action asserted against it.  *Memorandum in Support*, p. 2 (Docket No. 19).  On December 5, 2004, Plaintiff moved to amend its Complaint, and moved for summary judgment on that particular amendment.  *Motion to Amend the Complaint and Motion for Partial Summary Judgment* (Docket No. 25).  At the May 23, 2005 hearing held in this matter, however, Plaintiff withdrew his request for partial summary judgment.  The Court will now consider the parties' requested relief.

## II.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 18)

Under both Title VII of the Civil Rights Act and the Idaho Human Rights Act ("IHRA"),[1] an employer may not discriminate against an employee with respect to the compensation, terms, conditions, and privileges of employment on the basis of the employee's race.  *See Vasquez v. County of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003).  With that as context, Plaintiff has asserted the following unlawful discrimination claims against Defendant:

1. Breach of an Implied Covenant of Good Faith and Fair Dealing;
2. Unlawful discrimination by failing to promote;
3. Unlawful discrimination through hostile work environment;
4. Unlawful discrimination in terminating employment;

*Complaint*, ¶¶ 15-21(Docket No. 1).

---

[1]Under Idaho law, the IHRA "embodies the policies of the Civil Rights Act of 1964 . . . ."  *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 123 Idaho 650, 653 (1993).  The IHRA is interpreted by Idaho courts to parallel the protections of Title VII, and Idaho courts "are guided by federal law" in interpreting the IHRA.  *See id.*; *O'Dell v. Basabe*, 119 Idaho 796, 811 (1991).

Defendant argues that it is entitled to judgment as a matter of law on all of Plaintiff's causes of actions because there are no genuine issues of material fact. *Memorandum in Support*, p. 2 (Docket No. 19). Specifically, Defendant contends that Plaintiff's claims that Defendant breached the implied covenant of good faith and fair dealing "fails because [Plaintiff's] employment relationship with [Defendant] was an at-will relationship." *Id.* Further, Defendant asserts that Plaintiff's "harassment and discrimination claims are time-barred, and/or factually and legally deficient, and there is no evidence that retaliation was the motivation for the termination decision." *Id.* The Court will now consider Plaintiff's claims as a matter of law.

A.    <u>**Summary Judgment Standard**</u>

Motions for summary judgment are governed by Fed. R. Civ. P. 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.[2]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Ninth Circuit cases are in accord. *See, e.g.*, *British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id*.

---

[2] *See also* Rule 56(e), which provides in part:
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib.,* 882 F.2d at 374 (citation omitted).  Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed."  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the nonmoving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment."  *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."  *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

> A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense.  Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis added).

**B.      Breach of the Covenant of Good Faith and Fair Dealing Claim**

Under Idaho law, the implied covenant of good faith and fair dealing is not an action in tort, but rather the covenant is implied in contracts and protects employers' and employees' contractual rights in an employment contract.  *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627 (1989).  Importantly, the implied covenant of good faith and fair dealing does not alter the at-will status of an employment-at-will relationship.  *See Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 108 P.3d 380, 390 (2005) ("the covenant of good faith and fair dealing does not alter the right to fire an at-will employee; that is, the covenant does not create good cause as a requirement"); *see also Crea v. FMC Corp.*, 135 Idaho 175, 180-81 (2000); *Parker v. Boise Telco Federal Credit Union*, 129 Idaho 248, 256 (Id. Ct. App. 1996).  The employment at-will doctrine provides that, "absent express agreement to the contrary, either employer or employee may terminate their relationship at any time, for any reason."  Black's Law Dictionary 525 (6th ed. 1990).  Hence, "[u]nless an employee is hired pursuant to a contract that specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability." *Jenkins*, 108 P.3d at 387 (internal citations omitted).

Because Plaintiff "does not dispute that his employment was an at-will relationship," *Response in Opposition*, p. 7 (Docket No. 31), the implied covenant of good faith and fair

Order-7-

dealing did not create a duty for Defendant to terminate Plaintiff only for "good cause" and hence did not protect Plaintiff from a "no cause" termination.  *See Metcalf*, 116 Idaho at 627.

While Plaintiff seems to acknowledge this conclusion, he maintains that Defendant's alleged failure to follow its own disciplinary policies and procedures somehow subverts established legal authority on this matter.  *Response in Opposition*, p. 7 (Docket No. 31). However, Plaintiff is in error as an employer's alleged failure to follow disciplinary policies, which are not part of an employment contract, do not provide a basis for a breach of good faith and fair dealing claim.  *Raedlein v. Boise Cascade Corp.*, 129 Idaho 627, 630 (1996).

Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claim of breach of the covenant of good faith and fair dealing and Defendant's summary judgment motion on this claim is granted.

### C.   Failure to Promote Claim

A party is prohibited from filing a Title VII action without first filing a charge with the EEOC within 300 days after the occurrence of the allegedly discriminatory act.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002), citing 42 U.S.C. § 2000e-5(e)(1).  A party is prohibited from filing a civil action under the Idaho Human Rights Act ("IHRA") without first filing a complaint with the IHRC within one year of the alleged unlawful discrimination prior to filing a civil action.  Idaho Code § 67-5907(1).  Thus, by the time Plaintiff filed his IHRC charge on February 4, 2003, his claims under Title VII could properly include only those acts occurring on or after April 10, 2002.  His claims under the IHRA could properly include only those acts occurring on or after February 4, 2002.

The only instance of failure to promote, supported by the record, is co-worker Adam Frugoli's testimony that Plaintiff was allegedly passed over because a supervisor, District Sales Manager Bill Rockwell, did not "like the way [Plaintiff] looks or the way he talks." *Frugoli Affidavit*, ¶ 8 (Statement of Material Facts, Ex. A, Docket No. 27). This single incident occurred in approximately January 2001. *Id.* at ¶¶ 5, 8. Thus, Plaintiff's failure to promote claim is barred by the relevant statutes of limitation as it is based upon alleged facts occurring before February 4, 2002 or April 10, 2002. As an aside, "[d]iscrete discriminatory acts are not actionable if time-barred, even where they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 102.

Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claim of failure to promote and Defendant's summary judgment motion on this claim is granted.

## D.   <u>Hostile Work Environment Claim</u>

Preliminarily, while Defendant argues that this Court only has subject matter jurisdiction over those specific claims of discrimination that fall within the scope of the EEOC's investigation, the Court notes that it has subject matter jurisdiction over claims that could "reasonably be expected to grow out of the charge." *Vasquez*, 349 F.3d at 644. That said, Plaintiff concedes that "this case is not so much a hostile work environment case." *Response in Opposition*, p. 11 (Docket No. 31).

As a precursor, Title VII is not a "general civility code." *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798 (9th Cir. 2003), *citing Faragher v. City of Boca Raton*, 534 U.S. 775, 788 (1988). To survive summary judgment on a hostile work environment claim, Plaintiff must raise,

Order-9-

*inter alia*, a genuine issue of material fact that he was subjected to conduct "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment," *Vasquez*, 349 F.3d at 642.  A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).  Importantly, in order to determine if a work environment is sufficiently hostile, the Court is to consider:

> the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (internal citations omitted).

The record before the Court in the instant action contains *only* four alleged instances, over Plaintiff's roughly *three-and-half year* employ with Defendant, which could be construed as contributing to a hostile work environment.  First, Plaintiff alleges that prior to May 2000, one customer referred to him as an "Afghani" or "damn Afghani."  *Undisputed Facts*, ¶ 27 (Docket No. 20).  Second, in January 2001 Frugoli testified that District Sales Manager Bill Rockwell passed Plaintiff over for promotion because he said that he did not "like the way [Plaintiff] looks or the way he talks."  *Frugoli Affidavit*, ¶ 8 (Statement of Material Facts, Ex. A, Docket No. 27).  Third, Plaintiff also alleges that in November 2001 another customer referred to him in a derogatory manner.  *Undisputed Facts*, ¶ 28 (Docket No. 20).  Plaintiff cannot, however, recall the specific circumstances or what the customer said.  *Id.*  Plaintiff admits that he was not subjected to any other offensive customer comments after this time.  *Id.* at ¶ 29.  Fourth, in October 2002, Nyle Minnick ("Minnick"), one of Plaintiff's co-workers, contacted him by

Order-10-

telephone and informed him that two female customers avoided the bank branch where he worked because they feared Plaintiff was a terrorist. *Id.* at ¶¶ 23-26. Plaintiff reported this incident to a supervisor and Minnick was reprimanded and required to apologize to Plaintiff. *Id.* at ¶ 24. Plaintiff admits that he was not subjected to any other offensive co-worker comments after this time. *Id.* at ¶ 29.

Plaintiff offers no other evidence, nor does he describe how his employment conditions were altered as a result of the alleged offensive comments. In fact, Plaintiff's own deposition testimony is that he enjoyed his job, and that his job performance was not affected by the isolated offensive remarks. *Bisson Deposition*, p. 150, l. 4-10 (Dale Affidavit, Ex. A (Docket No. 21)).

The aforementioned isolated incidents simply do not rise to the level of a workplace "permeated with discriminatory intimidation, ridicule, and insult." *See Harris*, 510 U.S. at 21. The Ninth Circuit Court of Appeals has recently dismissed similar hostile work environment claims, despite allegations of workplace epithets far more numerous, more frequent, and more serious than those alleged in the instant action. *See e.g., Manatt*, 339 F.3d at 799. Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claim of hostile work environment and Defendant's summary judgment motion on this claim is granted.

### E.   Unlawful Employment Termination Claim

To begin with, Plaintiff does not dispute that there is a legitimate non-discriminatory reason for his termination. *Response in Opposition*, p. 13 (Docket No. 31). Following a formal investigation by Defendant's Corporate Security Division, Plaintiff was terminated because his conduct amounted to a violation of U.S. Bank's Code of Ethics and Business Conduct. *Johnson Affidavit*, ¶¶ 6-7 (Docket No. 22). Plaintiff's "Notice of Termination," which he signed, states:

Order-11-

> The basis for the termination is you have engaged in gross and
> willful misconduct, in which you have admitted , by changing
> codes to permanently waive overdraft fees on your own account as
> well as accounts that you are an authorized signer.

*Notice of Termination* (Dale Affidavit, Ex. C (Docket No. 21)).  Plaintiff does not deny that he

changed the codes on his personal checking account without authorization, nor does he dispute

that such conduct is a clear and direct violation of U.S. Bank's Code of Ethics and its Employee

Handbook.  What Plaintiff does argue, however, is that there was also an illegitimate

discriminatory reason for his termination, his race.

Plaintiff contends that he is entitled to a "mixed motive" analysis under *Desert Palace,*

*Inc. v. Costa*, 539 U.S. 90 (2003), on the basis of his unsubstantiated conclusion that "there are

both discriminatory and non-discriminatory reasons for his termination."  *Response in*

*Opposition*, p. 13 (Docket No. 31).  However, to entertain a "mixed motive" analysis, Plaintiff

must provide evidence to show that discrimination was a motivating factor in Defendant's

decision to terminate Plaintiff.  *Desert Palace*, 539 U.S. at 90; *Bell v. Kaiser Foundation*

*Hospitals*, 2004 WL 2853107 (9th Cir. 2004).   In short, Plaintiff must "present sufficient

evidence [ ]to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or

national origin was a motivating factor for any employment practice.'"  *Stegall v. Citadel*

*Broadcasting Co.*, 350 F.3d 1061, 1067 (9th Cir. 2004).  Plaintiff has failed to do this.

There is no specific or substantial evidence in the record to suggest that Defendant's

decision to terminate Plaintiff was based in whole, or in part, on a discriminatory rationale.

There is no evidence that Defendant's action was based upon anything but the admittedly

legitimate reason of Plaintiff's unethical job performance.  No place in the record does Plaintiff

Order-12-

provide evidence that the admittedly non-discriminatory reason for his termination was pretextual, either direct or indirect. *Stegall*, 350 F.3d at 1066 (a plaintiff "must proffer 'specific' and 'substantial' evidence of pretext to overcome [the employer's] motion for summary judgment"). Plaintiff does not identify a single employee who changed the codes on his or her personal checking account and was not terminated as a result of Defendant's discovery of such conduct. Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claims of unlawful employment termination and Defendant's summary judgment motion on these claims is granted.

**F.** **Summary**

Based on the foregoing, there are no genuine issues of material fact in relation to any of the causes of action Plaintiff asserts against Defendant. Even with inferences drawn in the light most favorable to the non-moving party, no genuine issues of material fact exist with respect to Plaintiff's claims, and thus, Defendant is entitled to summary judgment as a matter of law. Accordingly, all of Plaintiff's causes of actions are hereby dismissed.

**III.**

**PLAINTIFF"S MOTION TO AMEND AND MOTION FOR SUMMARY JUDGMENT**

**(Docket No. 25)**

The instant action was filed in December 2003 and removed to this Court on February 20, 2004. *Notice of Removal* (Docket No. 1). On July 14, 2004, the Court entered a Scheduling Order setting August 6, 2004 as the deadline for amendment of pleadings. *Scheduling Order*, ¶ 1 (Docket No. 12). Further, the Court stated that, "[t]his deadline shall only be extended for good cause shown," because, "[a]ll parties are entitled to know the claims and parties well-before trial

Order-13-

rather than be forced to pursue or defend against a moving target." *Id.*

On December 3, 2004, Defendant requested that the Court dismiss, as a matter of law, all of Plaintiff's claims against it. *Motion for Summary Judgment* (Docket No. 18). Subsequently, on December 6, 2004, Plaintiff filed a Motion to Amend its Complaint, and moved for summary judgment on that particular amendment. *Motion to Amend the Complaint and Motion for Partial Summary Judgment* (Docket No. 25). Again, Plaintiff withdrew his request for partial summary judgment at the May 23, 2005 hearing. The Court will now consider Plaintiff's remaining request to amend.

### A.   Motion to Amend Standard

The Ninth Circuit Court of Appeals has held that although motions to amend are generally resolved under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), once a district court enters a scheduling order pursuant to Federal Rule of Civil Procedure 16 and establishes an amendment deadline, any motion to amend filed after the deadline is governed by Rule 16. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). In such a situation, the party seeking to amend its pleading must first establish "good cause" for its amendment under Rule 16, and then if such "good cause" can be shown, the moving party must establish that the amendment is appropriate under Rule 15. *Id.* at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' ... Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id*. at 609

Order-14-

(citations omitted).  Thus, Plaintiff must establish that despite his diligent attempts to conform to the Scheduling Order (Docket No. 12), he could not reasonably conform to the August 6, 2004 amendment deadline.

**B.**     **Analysis**

In his Motion to Amend (Docket No. 25), Plaintiff specifically states that he has filed his motion to amend:

> to allege that he was not promoted and was paid less than other
> non-minority employees, and that [Defendant] violated their policy
> and procedures manual on affirmative action.  Further, [Plaintiff]
> moves for partial summary judgment on the claims of failure to pay
> and promote, and that there is direct and circumstantial evidence of
> discrimination in the violation by [Defendant] of their policies and
> procedures manual on affirmative action and progressive discipline
> policy, such that race was a motivating factor in the failure to
> adequately pay, promote and then to eventually terminate
> [Plaintiff].

*Motion to Amend*, p. 1 (Docket No. 25).  On December 22, 2004, Defendant filed a response stating that, "[P]laintiff's Motion to Amend should be denied because it is untimely, and because [P]laintiff has failed to set forth facts justifying an extension of this Court's Scheduling Order." *Response in Opposition*, pp. 1-2 (Docket No. 28).  The Court agrees.

Four months after the deadline for amendment of pleadings had passed, and without leave of the Court, Plaintiff has attempted to interpose new claims and new factual allegations into the instant action.  More importantly, Plaintiff's December 5, 2004 request to amend the pleadings was filed two days *after* the Court-imposed December 3, 2004 deadline for the filing of dispositive motions.  *Scheduling Order*, ¶ 6 (Docket No. 12).  Further, Plaintiff filed his Motion to Amend (Docket No. 25) without a proposed amended complaint.  Finally, Plaintiff failed to

Order-15-

provide adequate evidence establishing that he was unable to reasonably conform to the August 6, 2004 amendment deadline, despite his diligent attempts to conform to the Scheduling Order.

Had Plaintiff sought leave of the Court, pursuant to Federal Rule of Civil Procedure 15(a), to modify the Court's Scheduling Order *before* the expiration of the Court's amendment of pleadings deadline, the Court would have been willing to entertain Plaintiff's request to amend its Complaint.  At this late date, however, and without a legitimate reason for attempting to alter the course of these proceedings after the deadlines have passed for amendment to pleadings, disclosure of experts, discovery, and dispositive motions, the Court concludes that granting Plaintiff's motion would unfairly prejudice Defendant by requiring it to defend against a "moving target."

Thus, the Court finds that "good cause" has not been shown and the Court denies Plaintiff's request to amend its Complaint.  Accordingly, Plaintiff's Motion to Amend the Complaint and Motion for Partial Summary Judgment (Docket No. 25) is denied.

Order-16-

# IV.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.      Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.

2.      Plaintiff's Motion to Amend the Complaint and Motion for Partial Summary

       Judgment (Docket No. 25) is DENIED in part and WITHDRAWN in part.

3.      This action is DISMISSED in its entirety.



DATED:  **May 27, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | | |
|---|---|---|
| TERRY BISSOON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 04-094-E-LMB |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| U.S. BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court is Defendant's Motion for Summary Judgment

(Docket No. 18) and Plaintiff's Motion to Amend the Complaint and Motion for Partial

Summary Judgment (Docket No. 25).  Having carefully reviewed the record, considered oral

arguments, and otherwise being fully advised, the Court enters the following Order.

**I.**

**BACKGROUND**

This is an action filed by Terry Bisson ("Plaintiff") against U.S. Bank ("Defendant").

Plaintiff states that he is "from the West Indies and [his] ancestors are from India."  *Charge of*

*Discrimination*, p. 2 (Dale Affidavit, Ex. F (Docket No. 21)).  Plaintiff was employed by

Order-1-

Defendant as both a bank teller and a personal banker for approximately three-and-a-half years, from June 14, 1999 through December 19, 2002. *Undisputed Facts*, ¶¶ 1, 12 (Docket No. 20). Defendant terminated Plaintiff's employment because he altered certain bank codes for the purpose of permanently waiving overdraft fees on his personal bank account, as well as the accounts of others, so that Defendant would automatically pay their overdrawn checks and waive their associated overdraft fees. *Notice of Termination* (Dale Affidavit, Ex. C (Docket No. 21)). Plaintiff does not dispute that he "changed the overdraft codes on the accounts of himself and his fiancé (now spouse) Karen Campbell." *Response in Opposition*, p. 4 (Docket No. 31). Defendant hired Ryan Park, a Pacific Islander, to replace Plaintiff. *Johnson Affidavit*, ¶ 11 (Docket No. 22).

   In response to his termination, Plaintiff filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant subjected him to discrimination on the basis of religion and/or national origin, and retaliated against him for his complaint about a co-worker's remarks. *Charge of Discrimination* (Dale Affidavit, Ex. F (Docket No. 21)). IHRC issued a determination stating that it found no probable cause to believe that Defendant engaged in unlawful discrimination. *Complaint*, ¶ 14 (Docket No. 1).

   On December 17, 2003 Plaintiff filed the instant action alleging that Defendant breached an implied covenant of good faith and fair dealing by terminating his employment, and that Defendant created a hostile work environment, failed to promote him, and terminated his employment on the basis of his race and/or national origin in violation of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act. *Complaint*, ¶¶ 15-18 (Docket No. 1).

Order-2-

One year later, on December 3, 2004, Defendant filed its pending Motion for Summary Judgment (Docket No. 18). Defendant argues that there are no genuine issues of material fact related to any of Plaintiff's claims against Defendant and that Defendant is entitled to judgment as a matter of law as to each of Plaintiff's causes of action asserted against it. *Memorandum in Support*, p. 2 (Docket No. 19). On December 5, 2004, Plaintiff moved to amend its Complaint, and moved for summary judgment on that particular amendment. *Motion to Amend the Complaint and Motion for Partial Summary Judgment* (Docket No. 25). At the May 23, 2005 hearing held in this matter, however, Plaintiff withdrew his request for partial summary judgment. The Court will now consider the parties' requested relief.

## II.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 18)

Under both Title VII of the Civil Rights Act and the Idaho Human Rights Act ("IHRA"),[1] an employer may not discriminate against an employee with respect to the compensation, terms, conditions, and privileges of employment on the basis of the employee's race. *See Vasquez v. County of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003). With that as context, Plaintiff has asserted the following unlawful discrimination claims against Defendant:

1.  Breach of an Implied Covenant of Good Faith and Fair Dealing;
2.  Unlawful discrimination by failing to promote;
3.  Unlawful discrimination through hostile work environment;
4.  Unlawful discrimination in terminating employment;

*Complaint*, ¶¶ 15-21(Docket No. 1).

---

[1] Under Idaho law, the IHRA "embodies the policies of the Civil Rights Act of 1964 . . . ." *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 123 Idaho 650, 653 (1993). The IHRA is interpreted by Idaho courts to parallel the protections of Title VII, and Idaho courts "are guided by federal law" in interpreting the IHRA. *See id.*; *O'Dell v. Basabe*, 119 Idaho 796, 811 (1991).

Defendant argues that it is entitled to judgment as a matter of law on all of Plaintiff's causes of actions because there are no genuine issues of material fact. *Memorandum in Support*, p. 2 (Docket No. 19). Specifically, Defendant contends that Plaintiff's claims that Defendant breached the implied covenant of good faith and fair dealing "fails because [Plaintiff's] employment relationship with [Defendant] was an at-will relationship." *Id.* Further, Defendant asserts that Plaintiff's "harassment and discrimination claims are time-barred, and/or factually and legally deficient, and there is no evidence that retaliation was the motivation for the termination decision." *Id.* The Court will now consider Plaintiff's claims as a matter of law.

A.      **Summary Judgment Standard**

Motions for summary judgment are governed by Fed. R. Civ. P. 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.[2]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Ninth Circuit cases are in accord.  *See, e.g.*, *British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987).  Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.  *Id.* at 631.  As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied."  *Id.*

---

[2] *See also* Rule 56(e), which provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Order-5-

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib.,* 882 F.2d at 374 (citation omitted).  Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed."  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the nonmoving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment."  *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."  *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

> A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense.  Disputes over irrelevant or

unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)) (emphasis added).

### B.        Breach of the Covenant of Good Faith and Fair Dealing Claim

Under Idaho law, the implied covenant of good faith and fair dealing is not an action in

tort, but rather the covenant is implied in contracts and protects employers' and employees'

contractual rights in an employment contract.  *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622,

627 (1989).  Importantly, the implied covenant of good faith and fair dealing does not alter the

at-will status of an employment-at-will relationship.  *See Jenkins v. Boise Cascade Corp.*, 141

Idaho 233, 108 P.3d 380, 390 (2005) ("the covenant of good faith and fair dealing does not alter

the right to fire an at-will employee; that is, the covenant does not create good cause as a

requirement"); *see also Crea v. FMC Corp.*, 135 Idaho 175, 180-81 (2000); *Parker v. Boise

Telco Federal Credit Union*, 129 Idaho 248, 256 (Id. Ct. App. 1996).  The employment at-will

doctrine provides that, "absent express agreement to the contrary, either employer or employee

may terminate their relationship at any time, for any reason."  Black's Law Dictionary 525 (6th

ed. 1990).  Hence, "[u]nless an employee is hired pursuant to a contract that specifies the

duration of the employment or limits the reasons for which an employee may be discharged, the

employment is at the will of either party and the employer may terminate the relationship at any

time for any reason without incurring liability." *Jenkins*, 108 P.3d at 387 (internal citations

omitted).

Because Plaintiff "does not dispute that his employment was an at-will relationship,"

*Response in Opposition*, p. 7 (Docket No. 31), the implied covenant of good faith and fair

Order-7-

dealing did not create a duty for Defendant to terminate Plaintiff only for "good cause" and hence did not protect Plaintiff from a "no cause" termination. *See Metcalf*, 116 Idaho at 627.

While Plaintiff seems to acknowledge this conclusion, he maintains that Defendant's alleged failure to follow its own disciplinary policies and procedures somehow subverts established legal authority on this matter. *Response in Opposition*, p. 7 (Docket No. 31). However, Plaintiff is in error as an employer's alleged failure to follow disciplinary policies, which are not part of an employment contract, do not provide a basis for a breach of good faith and fair dealing claim. *Raedlein v. Boise Cascade Corp.*, 129 Idaho 627, 630 (1996).

Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claim of breach of the covenant of good faith and fair dealing and Defendant's summary judgment motion on this claim is granted.

C.     **Failure to Promote Claim**

A party is prohibited from filing a Title VII action without first filing a charge with the EEOC within 300 days after the occurrence of the allegedly discriminatory act. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002), citing 42 U.S.C. § 2000e-5(e)(1).  A party is prohibited from filing a civil action under the Idaho Human Rights Act ("IHRA") without first filing a complaint with the IHRC within one year of the alleged unlawful discrimination prior to filing a civil action.  Idaho Code § 67-5907(1).  Thus, by the time Plaintiff filed his IHRC charge on February 4, 2003, his claims under Title VII could properly include only those acts occurring on or after April 10, 2002.  His claims under the IHRA could properly include only those acts occurring on or after February 4, 2002.

Order-8-

The only instance of failure to promote, supported by the record, is co-worker Adam Frugoli's testimony that Plaintiff was allegedly passed over because a supervisor, District Sales Manager Bill Rockwell, did not "like the way [Plaintiff] looks or the way he talks." *Frugoli Affidavit*, ¶ 8 (Statement of Material Facts, Ex. A, Docket No. 27).  This single incident occurred in approximately January 2001.  *Id.* at ¶¶ 5, 8.  Thus, Plaintiff's failure to promote claim is barred by the relevant statutes of limitation as it is based upon alleged facts occurring before February 4, 2002 or April 10, 2002.  As an aside, "[d]iscrete discriminatory acts are not actionable if time-barred, even where they are related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 102.

Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claim of failure to promote and Defendant's summary judgment motion on this claim is granted.

### D.      <u>Hostile Work Environment Claim</u>

Preliminarily, while Defendant argues that this Court only has subject matter jurisdiction over those specific claims of discrimination that fall within the scope of the EEOC's investigation, the Court notes that it has subject matter jurisdiction over claims that could "reasonably be expected to grow out of the charge."  *Vasquez*, 349 F.3d at 644.  That said, Plaintiff concedes that "this case is not so much a hostile work environment case."  *Response in Opposition*, p. 11 (Docket No. 31).

As a precursor, Title VII is not a "general civility code."  *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798 (9th Cir. 2003), *citing Faragher v. City of Boca Raton*, 534 U.S. 775, 788 (1988).  To survive summary judgment on a hostile work environment claim, Plaintiff must raise,

Order-9-

*inter alia*, a genuine issue of material fact that he was subjected to conduct "sufficiently severe or

pervasive to alter the conditions of the plaintiff's employment and create an abusive work

environment," *Vasquez*, 349 F.3d at 642.  A hostile work environment exists when "the

workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Harris v. Forklift*

*Sys. Inc.*, 510 U.S. 17, 21 (1993).  Importantly, in order to determine if a work environment is

sufficiently hostile, the Court is to consider:

> the totality of the circumstances, including the frequency of the
> discriminatory conduct; its severity; whether it is physically
> threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work
> performance.

*Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (internal citations omitted).

The record before the Court in the instant action contains *only* four alleged instances, over

Plaintiff's roughly *three-and-half year* employ with Defendant, which could be construed as

contributing to a hostile work environment.  First, Plaintiff alleges that prior to May 2000, one

customer referred to him as an "Afghani" or "damn Afghani."  *Undisputed Facts*, ¶ 27 (Docket

No. 20).  Second, in January 2001 Frugoli testified that District Sales Manager Bill Rockwell

passed Plaintiff over for promotion because he said that he did not "like the way [Plaintiff] looks

or the way he talks."  *Frugoli Affidavit*, ¶ 8 (Statement of Material Facts, Ex. A, Docket No. 27).

Third, Plaintiff also alleges that in November 2001 another customer referred to him in a

derogatory manner.  *Undisputed Facts*, ¶ 28 (Docket No. 20).  Plaintiff cannot, however, recall

the specific circumstances or what the customer said.  *Id.*  Plaintiff admits that he was not

subjected to any other offensive customer comments after this time.  *Id.* at ¶ 29.  Fourth, in

October 2002, Nyle Minnick ("Minnick"), one of Plaintiff's co-workers, contacted him by

Order-10-

telephone and informed him that two female customers avoided the bank branch where he worked because they feared Plaintiff was a terrorist. *Id.* at ¶¶ 23-26. Plaintiff reported this incident to a supervisor and Minnick was reprimanded and required to apologize to Plaintiff. *Id.* at ¶ 24. Plaintiff admits that he was not subjected to any other offensive co-worker comments after this time. *Id.* at ¶ 29.

Plaintiff offers no other evidence, nor does he describe how his employment conditions were altered as a result of the alleged offensive comments. In fact, Plaintiff's own deposition testimony is that he enjoyed his job, and that his job performance was not affected by the isolated offensive remarks. *Bisson Deposition*, p. 150, l. 4-10 (Dale Affidavit, Ex. A (Docket No. 21)).

The aforementioned isolated incidents simply do not rise to the level of a workplace "permeated with discriminatory intimidation, ridicule, and insult." *See Harris*, 510 U.S. at 21. The Ninth Circuit Court of Appeals has recently dismissed similar hostile work environment claims, despite allegations of workplace epithets far more numerous, more frequent, and more serious than those alleged in the instant action. *See e.g., Manatt*, 339 F.3d at 799. Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claim of hostile work environment and Defendant's summary judgment motion on this claim is granted.

## E.   Unlawful Employment Termination Claim

To begin with, Plaintiff does not dispute that there is a legitimate non-discriminatory reason for his termination. *Response in Opposition*, p. 13 (Docket No. 31). Following a formal investigation by Defendant's Corporate Security Division, Plaintiff was terminated because his conduct amounted to a violation of U.S. Bank's Code of Ethics and Business Conduct. *Johnson Affidavit*, ¶¶ 6-7 (Docket No. 22). Plaintiff's "Notice of Termination," which he signed, states:

Order-11-

> The basis for the termination is you have engaged in gross and
> willful misconduct, in which you have admitted , by changing
> codes to permanently waive overdraft fees on your own account as
> well as accounts that you are an authorized signer.

*Notice of Termination* (Dale Affidavit, Ex. C (Docket No. 21)).  Plaintiff does not deny that he

changed the codes on his personal checking account without authorization, nor does he dispute

that such conduct is a clear and direct violation of U.S. Bank's Code of Ethics and its Employee

Handbook.  What Plaintiff does argue, however, is that there was also an illegitimate

discriminatory reason for his termination, his race.

Plaintiff contends that he is entitled to a "mixed motive" analysis under *Desert Palace,*

*Inc. v. Costa*, 539 U.S. 90 (2003), on the basis of his unsubstantiated conclusion that "there are

both discriminatory and non-discriminatory reasons for his termination."  *Response in*

*Opposition*, p. 13 (Docket No. 31).  However, to entertain a "mixed motive" analysis, Plaintiff

must provide evidence to show that discrimination was a motivating factor in Defendant's

decision to terminate Plaintiff.  *Desert Palace*, 539 U.S. at 90; *Bell v. Kaiser Foundation*

*Hospitals*, 2004 WL 2853107 (9th Cir. 2004).   In short, Plaintiff must "present sufficient

evidence [ ]to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or

national origin was a motivating factor for any employment practice.'"  *Stegall v. Citadel*

*Broadcasting Co.*, 350 F.3d 1061, 1067 (9th Cir. 2004).  Plaintiff has failed to do this.

There is no specific or substantial evidence in the record to suggest that Defendant's

decision to terminate Plaintiff was based in whole, or in part, on a discriminatory rationale.

There is no evidence that Defendant's action was based upon anything but the admittedly

legitimate reason of Plaintiff's unethical job performance.  No place in the record does Plaintiff

Order-12-

provide evidence that the admittedly non-discriminatory reason for his termination was pretextual, either direct or indirect. *Stegall*, 350 F.3d at 1066 (a plaintiff "must proffer 'specific' and 'substantial' evidence of pretext to overcome [the employer's] motion for summary judgment"). Plaintiff does not identify a single employee who changed the codes on his or her personal checking account and was not terminated as a result of Defendant's discovery of such conduct. Accordingly, the Court concludes that there is no genuine issue of material fact concerning Plaintiff's claims of unlawful employment termination and Defendant's summary judgment motion on these claims is granted.

**F.    Summary**

Based on the foregoing, there are no genuine issues of material fact in relation to any of the causes of action Plaintiff asserts against Defendant. Even with inferences drawn in the light most favorable to the non-moving party, no genuine issues of material fact exist with respect to Plaintiff's claims, and thus, Defendant is entitled to summary judgment as a matter of law. Accordingly, all of Plaintiff's causes of actions are hereby dismissed.

**III.**

**PLAINTIFF"S MOTION TO AMEND AND MOTION FOR SUMMARY JUDGMENT**

**(Docket No. 25)**

The instant action was filed in December 2003 and removed to this Court on February 20, 2004. *Notice of Removal* (Docket No. 1). On July 14, 2004, the Court entered a Scheduling Order setting August 6, 2004 as the deadline for amendment of pleadings. *Scheduling Order*, ¶ 1 (Docket No. 12). Further, the Court stated that, "[t]his deadline shall only be extended for good cause shown," because, "[a]ll parties are entitled to know the claims and parties well-before trial

Order-13-

rather than be forced to pursue or defend against a moving target." *Id.*

On December 3, 2004, Defendant requested that the Court dismiss, as a matter of law, all of Plaintiff's claims against it. *Motion for Summary Judgment* (Docket No. 18). Subsequently, on December 6, 2004, Plaintiff filed a Motion to Amend its Complaint, and moved for summary judgment on that particular amendment. *Motion to Amend the Complaint and Motion for Partial Summary Judgment* (Docket No. 25). Again, Plaintiff withdrew his request for partial summary judgment at the May 23, 2005 hearing. The Court will now consider Plaintiff's remaining request to amend.

### A.   Motion to Amend Standard

The Ninth Circuit Court of Appeals has held that although motions to amend are generally resolved under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), once a district court enters a scheduling order pursuant to Federal Rule of Civil Procedure 16 and establishes an amendment deadline, any motion to amend filed after the deadline is governed by Rule 16. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). In such a situation, the party seeking to amend its pleading must first establish "good cause" for its amendment under Rule 16, and then if such "good cause" can be shown, the moving party must establish that the amendment is appropriate under Rule 15. *Id.* at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' ... Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* at 609

Order-14-

(citations omitted).  Thus, Plaintiff must establish that despite his diligent attempts to conform to the Scheduling Order (Docket No. 12), he could not reasonably conform to the August 6, 2004 amendment deadline.

**B.**     **Analysis**

In his Motion to Amend (Docket No. 25), Plaintiff specifically states that he has filed his motion to amend:

> to allege that he was not promoted and was paid less than other non-minority employees, and that [Defendant] violated their policy and procedures manual on affirmative action.  Further, [Plaintiff] moves for partial summary judgment on the claims of failure to pay and promote, and that there is direct and circumstantial evidence of discrimination in the violation by [Defendant] of their policies and procedures manual on affirmative action and progressive discipline policy, such that race was a motivating factor in the failure to adequately pay, promote and then to eventually terminate [Plaintiff].

*Motion to Amend*, p. 1 (Docket No. 25).  On December 22, 2004, Defendant filed a response stating that, "[P]laintiff's Motion to Amend should be denied because it is untimely, and because [P]laintiff has failed to set forth facts justifying an extension of this Court's Scheduling Order." *Response in Opposition*, pp. 1-2 (Docket No. 28).  The Court agrees.

Four months after the deadline for amendment of pleadings had passed, and without leave of the Court, Plaintiff has attempted to interpose new claims and new factual allegations into the instant action.  More importantly, Plaintiff's December 5, 2004 request to amend the pleadings was filed two days *after* the Court-imposed December 3, 2004 deadline for the filing of dispositive motions.  *Scheduling Order*, ¶ 6 (Docket No. 12).  Further, Plaintiff filed his Motion to Amend (Docket No. 25) without a proposed amended complaint.  Finally, Plaintiff failed to

Order-15-

provide adequate evidence establishing that he was unable to reasonably conform to the August 6, 2004 amendment deadline, despite his diligent attempts to conform to the Scheduling Order.

Had Plaintiff sought leave of the Court, pursuant to Federal Rule of Civil Procedure 15(a), to modify the Court's Scheduling Order *before* the expiration of the Court's amendment of pleadings deadline, the Court would have been willing to entertain Plaintiff's request to amend its Complaint.  At this late date, however, and without a legitimate reason for attempting to alter the course of these proceedings after the deadlines have passed for amendment to pleadings, disclosure of experts, discovery, and dispositive motions, the Court concludes that granting Plaintiff's motion would unfairly prejudice Defendant by requiring it to defend against a "moving target."

Thus, the Court finds that "good cause" has not been shown and the Court denies Plaintiff's request to amend its Complaint.  Accordingly, Plaintiff's Motion to Amend the Complaint and Motion for Partial Summary Judgment (Docket No. 25) is denied.

## IV.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.      Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.

2.      Plaintiff's Motion to Amend the Complaint and Motion for Partial Summary

Judgment (Docket No. 25) is DENIED in part and WITHDRAWN in part.

3.      This action is DISMISSED in its entirety.



DATED:  **May 27, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge